# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEFFREY CORPORAL | * | |
| Petitioner | * | |
| v | * | Civil Action No. DKC-09-3454 |
| PHILIP MORGAN and ATTORNEY GENERAL | * | |
| | * | |
| Respondents | | |

***

## **MEMORANDUM OPINION**

Pending are Petitioner's Petition for Writ of Habeas Corpus and Respondents' Answer. ECF No. 8. After review, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2010); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)).

## Background

On June 15, 2006, Petitioner was arrested for the June 8, 2006 armed robbery of Parkside Liquors in Baltimore City. ECF No. 8 at Ex. 10, p. 15. He was arraigned on charges of armed robbery, robbery, assault, reckless endangerment, and handgun offenses on August 23, 2006. The initial trial date was set for October 31, 2006.

The State requested a postponement of the trial date until January 29, 2007, to obtain DNA testing results on items found in the car allegedly used in the robbery and to consolidate Petitioner's case with that of his co-defendant, Mr. Satchell.[1] *Id*. at Ex. 2, pp. 7 – 9. On January 29, 2007, the trial court found good cause to again grant the State's request for postponement in

---

[1] Satchell was not tried with Petitioner, because he accepted a plea offer made by the State on April 12, 2007, prior to the return of the DNA results. ECF No. 1 at p. 16. The State made it clear the offer would expire when the DNA results were returned. Petitioner declined the offer.

light of the pending DNA test results. *Id*. at Ex. 3. Trial was reset to April 12, 2007. *Id*. at Ex. 10, p. 16. On April 12, 2007, the case was reset to June 4, 2007, at the State's request because the DNA testing was not completed. *Id*. Each time the State moved for a postponement, Petitioner, through counsel, indicated that he did not consent to the postponement and did not waive his right to speedy trial. On June 4, 2007, both the State and the defense were prepared to go to trial but the case was reset to August 9, 2007, due to the unavailability of a judge and a courtroom. *Id*. at pp. 16-17.

Petitioner's jury trial took place from August 9 through August 14, 2007, with Judge John Prevas presiding. ECF No. 8 at Ex. 6 and 10. Evidence presented at trial established that Parkside Liquors, owned by Mike Kim, was robbed by two black men. After the store was robbed, Kim followed the men outside and saw them leave in a car. Kim was able to observe the license plate number on the car, enabling the police to locate the car within one hour of the robbery, parked approximately one mile away. ECF No. 8 at Ex. 10, pp. 25—27.

Detective Robert Jackson of the Robbery Unit interviewed Kim and other employees of the liquor store who described the robbers as young men in their early twenties. One assailant was described as being about six feet tall and 160 to 165 pounds, and the other as approximately five feet six inches, weighing about 150 to 160 pounds and wearing a Chicago Cubs baseball cap. Jackson, according to Petitioner's account, failed to record his interview with Kim and other employees and could not recall who gave the descriptions of the assailants. The day the car was located, employee James Sin identified Petitioner as one of the robbers in a photographic array, but Kim was unable to identify Petitioner in the same photographic array. ECF No. 1 at pp. 9 – 10; and18. A motion to suppress the witnesses' photographic array identification was denied on August 9, 2007. *Id*. at p. 17. Despite his inability to identify Petitioner in the array,

Kim identified him at the pre-trial hearing as the man who jumped over the counter during the robbery after personally observing Peitioner. *Id.* at p. 21. Although defense counsel argued during the motion to suppress that the State's failure to turn over the photo array shown to Kim adversely affected his ability to cross-examine Kim, the in-court identification was not suppressed. *Id.* at p. 22.

Detective Jackson testified that he ran the license number and discovered that the car had been rented by Latasha Hicks. ECF No. 8 at Ex. 10, pp. 25—27. Hicks testified for the State, explaining that in May of 2006, she rented the vehicle on Petitioner's behalf because Petitioner had claimed his car was in the shop and he needed a car to get to work. *Id.* at p. 22. Petitioner later telephoned Hicks and claimed that the rental car had been towed, then later claimed it had been stolen. *Id.* at p. 23. When Hicks responded that she was going to call the rental company, Petitioner told her to wait as he was not certain it had been towed. *Id.* at p. 23. Hicks then called the rental company and learned that the vehicle had already been located by way of its GPS device. *Id.* Jackson also testified that he had searched the car and saw no evidence it had been stolen. *Id.* at p. 27. Among the items found in the car were pieces of mail addressed to Petitioner, a Gatorade bottle, and a juice bottle. *Id.* at p. 28. Evidence of Petitioner's DNA as well as his fingerprints were found in the car and on items inside the car.

The jury returned a guilty verdict on charges of armed robbery, robbery, reckless endangerment, use of a handgun in the commission of a crime of violence, and transporting a handgun in a vehicle. He was sentenced to forty years in prison on August 15, 2007.

On direct appeal to the Court of Special Appeals of Maryland, Petitioner alleged the trial court erred by: failing to remedy a discovery violation by the State; failing to suppress an in-court identification by a witness; failing to try the case within a reasonable time period; and

convicting Petitioner of felony theft when he had not been charged with the offense. ECF No. 8 at Ex. 7, p. 2. In an unreported opinion filed on December 22, 2008, the Court of Special Appeals vacated the felony theft conviction, but otherwise affirmed the trial court's judgment of conviction. *Id*. at Ex. 10. The court rejected Petitioner's claim that his constitutional right to a speedy trial had been violated. *Id.* at pp. 36-45.

In his pro se petition for a writ of certiorari, Petitioner sought further review of his case by the Court of Appeals of Maryland, raising the three claims rejected by the Court of Special Appeals. *Id*. at Ex. 11. On April 10, 2009, the Petition for Writ of Certiorari was denied. *Id*. at Ex. 12. Petitioner filed for State post-conviction relief on August 14, 2009; the matter remains pending. *Id*. at Ex. 1, p. 12. Petitioner's claim in this court is that he was denied his right to a speedy trial as guaranteed by the Sixth Amendment. ECF No. 1.

## Preliminary Matters

### Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he must have exhausted each claim presented to the federal court by pursuing remedies available in State court. This exhaustion requirement is satisfied by seeking review of the claim in the highest State court with jurisdiction to consider the claim. *See* 28 U.S.C. §2254(b) and (c). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal (and thereafter seeking *certiorari* to the Court of Appeals), and with other claims by way of post-conviction review.

To exhaust a claim through post-conviction proceedings, it must be raised in a petition filed in the Circuit Court and if unsuccessful there, in an application for leave to appeal to the Court of Special Appeals. *See* Md. Crim. Proc. Code Ann. §7-109. If the Court of Special

4

Appeals denies the application, there is no further review available and the claim is exhausted. *See* Md. Cts. & Jud. Proc. Code Ann., §12-202. If, however, the application is granted but relief on the merits of the claim is denied, the petitioner must file a petition for writ of certiorari to the Court of Appeals. *See Williams v. State*, 292 Md. 201, 210-11 (1981).

Petitioner's claim has been presented on direct appeal to the Maryland Court of Appeals, and does not rely on facts or arguments substantially different than those already asserted in State court; therefore, the claim is properly exhausted for purposes of federal habeas corpus review.[2] Petitioner was provided notice that proceeding on the sole exhausted claim would likely foreclose any future petition raising the claims asserted in his post-conviction proceeding. ECF No. 11. Petitioner was directed to affirmatively inform the court whether he intended to go forward with this one claim in light of the fact that a later petition might be foreclosed. In response he filed a Motion to Proceed on the Exhausted Claim. ECF No. 12. He expresses an understanding of the consequences for doing so; therefore, the merits of the claim shall be addressed.

Statute of Limitations

Respondents do not contend -- and the court does not find -- that the petition is time-barred pursuant to 28 U.S.C. §2244(d).

**Standard of Review**

Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the State's adjudication on the merits:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

---

[2] With limited exceptions, Petitioners are entitled to file only one federal habeas corpus petition. *See* 28 U.S.C. §2244.

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

A decision is "contrary to [Supreme Court] precedent if the State court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000);[3] *Renico v. Lett*, __ U.S.__, 130 S. Ct. 1855 (2010). Section 2254(d) also requires federal courts to give great deference to a State court's factual findings. *See Lenz v. Washington,* 444 F. 3d 295, 299 (4th Cir. 2006). Section 2254(e)(1) provides that a determination of a factual issue made by a State court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a State court based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the State court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). With these standards in mind, the court will address the merits of Petitioner's speedy trial claim.

## Analysis

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." U.S. Const. Amend VI, §1. Despite the breadth of the

---

[3] Although §2254(d) is a "highly deferential standard for evaluating State-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that State court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*), a State court decision is "contrary to" clearly established federal law when "the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 at 412-413. A State court decision is based on an "unreasonable application" of clearly established federal law when "the State court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the State court's application of clearly established federal law was objectively unreasonable." *Id.* at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

6

Amendment's language, some delay of trial is constitutionally permissible. *See Doggett v. U.S.* 505 U.S. 647, 651 (1992). In deciding whether Petitioner's Sixth Amendment right to a speedy trial was violated, four factors must be considered: the length of the delay; the reason for the delay; the timeliness of the assertion of the right; and the actual prejudice suffered as a result of the delay. *See Barker v. Wingo*, 407 U.S. 514, 532 (1972). In *Barker*, the Court cautioned that the right to a speedy trial was not absolute:

> We regard none of the four factors identified above (length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant) as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Id*. at 533 (footnote omitted). As to the reason for the delay in trial, the Court stated:

> [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id*. at 531.

Prejudicial effect of a delay includes oppressive pretrial incarceration, defendant's anxiety, and, most importantly, impairment of the ability to prepare a defense. *See Moore v. Arizona*, 414 U.S. 25 (1973).

> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable

7

> simply because the accused cannot demonstrate exactly how it has prejudiced him.

*Doggett,* 505 U.S. at 656-657.

In analyzing Petitioner's speedy trial claim, the Court of Special Appeals noted that the parties agreed that Petitioner's speedy trial right attached on June 15, 2006, the date of his arrest, and there was a 14-months delay before trial began on August 9, 2007. ECF No. 8 at Ex. 10, p. 38. The appellate court found that the length of the delay was not a weighty factor[4] and characterized the delay in Petitioner's case as "not extraordinary enough to be sufficient, in and of itself, to warrant dismissal." *Id*. at p. 39. Accordingly, the court went on to balance the length of the delay against the remaining *Barker* factors.

The court noted there were four reasons asserted for the postponements granted in Petitioner's case. The first three delays were due to the State's "failure to process the DNA evidence," but also due to court unavailability. *Id.* at p. 40. The appellate court found that "there [was] nothing to suggest that the State did not act in good faith in attempting to obtain DNA results, nor is there anything that suggests that the State failed to aggressively pursue the results." *Id*. The court went on to find that the State's attempts to obtain and process DNA evidence were reasonable with respect to each postponement and found no cause to believe the delays were "motivated by prosecutorial dilly-dallying." *Id*. Relying on *Glover v. State*, 368 Md. 211 (2002), the Court of Special Appeals noted that processing of DNA evidence is highly technical, requiring trial courts to allow more time for results, and concluding that "postponements emanating from a delay in the return of DNA results that was not based on the State's failure to act in a diligent manner" is neutral and justified. ECF No. 8 at Ex. 10, p. 41. Petitioner's allegation that the State misrepresented the status of the DNA results on April 12, 2007, was

---

[4] *Citing Glover v. State*, 368 Md. 211, 225 (2002).

rejected by the appellate court because there was no indication in the record that the DNA report, which was dated April 2, 2007, was received by the State on that date. *Id.* at p. 43. Thus, the delay was not attributable to prosecutorial neglect.

With respect to the fourth delay which occurred on June 4, 2007, both the State and the defense were prepared to go to trial, but neither a court room nor a judge was available. The appellate court observed that "[a]gain, the postponement did not emanate from prosecutorial neglect, and to the extent the responsibility for the circumstances rest with the government rather than with the defendant, it will only do so lightly." *Id* at p. 43. Because the reasons for the delay were not due to prosecutorial neglect, the court concluded that dismissal was not warranted on the basis of delay alone. *Id.* at p. 44.

After noting that there was no dispute regarding whether Petitioner asserted his right to a speedy trial, the court examined the issue of whether there was prejudice to Petitioner resulting from the delay. *Id.* at p. 44. Petitioner alleged, as he does here, that he was "demonstrably prejudiced by, the State's delay in bringing the case to trial, in that the linchpin of [his] convictions were the in-court identifications made by Mr. Kim and Mr. Sin," which he characaterized as the only evidence placing him at the crime scene. *Id.* at pp. 44- 45. In addition, Petitioner claimed the "passage of time compromised the accuracy of the in-court identifications made by Mr. Sin and Mr. Kim," increasing the risk of misidentification. *Id.* at p. 45. The State countered that the witnesses' testimony was not the only evidence connecting Petitioner to the crime scene, the discrepancy in Mr. Kim's identification of Petitioner was not attributable to the delay as it always existed in the case, and any potential for misidentification of Petitioner as the assailant would have been helpful to the defense as exculpatory evidence. *Id.* The Court of Special Appeals concluded that:

> We fail to see how the delay prejudiced appellant. Mr. Sin identified appellant shortly after the robbery. Mr. Kim did not, but testified that reviewing a surveillance tape aided in his identification. The delay did not cause the above circumstances. Appellant had the opportunity to put the witnesses credibility at issue before the jury.
>
> Based on the foregoing, after balancing the *Barker* factors, we conclude that appellant's constitutional right to a speedy trial was not violated.

*Id*.

Petitioner assigns error to the trial and appellate courts' analysis, claiming clear and convincing evidence in the record established the State's delay was negligent and must be weighed heavily against the State. ECF No. 9 at p. 8. He cites to the fact that the State waited until October 30, 2006, the day before an initial hearing date, to file a motion to obtain a saliva sample from Petitioner for purposes of DNA testing on items found in the car connected with the robbery. ECF No. 1 at p. 11. This resulted in the first postponement until January 29, 2007. *Id*. at p. 12. On the next scheduled hearing date, January 29, 2007, Petitioner recalls the State's representation that the DNA evidence was still being evaluated and that it should be completed in approximately six weeks. *Id*. at p. 13. Petitioner then claims that the State later asserted the DNA analysis takes a minimum of four months to complete, resulting in another postponement to April 12, 2007. *Id*. at p. 14.

Petitioner recalls that at the April 12, 2007 hearing the State made an offer which it said would be withdrawn upon receipt of the DNA results. ECF No. 1 at pp. 15 -- 16. Petitioner's co-defendant accepted the plea deal. Petitioner characterizes the circumstances of the plea deal as suspicious. He further asserts that the time between his arrest and the initial trial date on October 31, 2006, was more than sufficient for the State to obtain a saliva sample; thus, the delay should be deemed negligent. *Id*. at p. 24. Petitioner states the trial court erred in refusing

10

to weigh the first three delays heavily against the State when the initial four- month delay in obtaining saliva samples was clearly inexcusable "dilly-dallying."[5] *Id*. at p. 27. He further alleges that his case, which involved only three witnesses who were not employed by the State and did not include a co-defendant, was not complex, and thus, the entire 14-month delay should be weighed heavily against the State. *Id*. at p. 43.

Petitioner's position is unavailing. The reasons provided for the delays were viewed in light of the highly technical nature of DNA testing and both the trial and appellate courts found no evidence that the State was deliberately delaying the process. There is no clear and convincing evidence that the delay was due to prosecutorial neglect, other than Petitioner's subjective view that four months was too long for the State to wait before seeking saliva samples. The appellate court's conclusion that there was no prosecutorial neglect in this case must stand.

Petitioner asserts prejudice resulted from the delay because "the linchpin of Petitioner's conviction was the in-court identification made by Kim . . . the only evidence that placed Petitioner at the crime scene." ECF No. 1 at p. 75. Petitioner states that Jackson's dimmed memory and loss of evidence was prejudicial to him since Jackson failed to record Kim and Sin's descriptions of the two robbers. In addition, Jackson was unable accurately to recall the progression of his investigation, in particular how and when a negative photo array was lost. *Id*. at p. 76. Petitioner states that as a result, he was rendered unable to suppress the indentification and to prepare an effective defense.

---

[5] On appeal Petitioner claimed the State court had concluded that the delay appeared to be attributable to the State "dilly-dallying in not asking for four months even for the [saliva] sample to be drawn." The Court of Special Appeals observed that the State court had merely commented about the four month delay, but found that "the State's attempts to obtain and process the DNA sample were reasonable with respect to each postponement sought on that basis." ECF No. 8 at Ex. 10, pp. 40—41.

Petitioner has failed to provide clear and convincing evidence that the State courts' conclusions regarding prejudice were objectively unreasonable. The witnesses whose memories may have been tested by the delay were witnesses for the State. Kim's failure to identify Petitioner after the robbery was brought out at trial and Petitioner had the opportunity to exploit the discrepancy before the jury. Moreover, his characterization of the State's evidence as limited leaves out the positivie identification of the car used to leave the scene and Hicks' testimony that the car was rented by her on Petitioner's behalf. Thus, the State courts' conclusion that Petitioner was not prejudiced by the delay must stand.

## Conclusion

Having found no merit in Petitioner's Sixth Amendment claim that his right to a speedy trial was violated, this court will, by separate Order, deny the Petition for Writ of Habeas Corpus. Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U. S.C.§ 2253(c)(2).


Date:   November 17, 2010                             /s/
                                        DEBORAH K. CHASANOW
                                        United States District Judge